D. Maimon Kirschenbaum
Denise Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiff proposed FLSA*
*Collective Plaintiffs, and proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

**ERIN LANG, ILANA ENGELBERG,**
**ZAYNAH SHAIKH, and BAYLEY**
**BLAISDELL, on behalf of themselves and**
**others similarly situated,**

               **Plaintiffs,**

               **v.**

**MCFNY2 LLC d/b/a MISSION CHINESE**
**RESTAURANT, JAMES DANILE**
**"DANNY" BOWIEN, JANE HEM, and**
**ADRIANNA VAREDI,**

               **Defendants.**

-------------------------------------------------------x

        **COMPLAINT**

        **FLSA COLLECTIVE ACTION AND**
        **RULE 23 CLASS ACTION**

        **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

## INTRODUCTION

1.      Mission Chinese is a world-famous critically acclaimed restaurant and celebrity hot-spot. Unfortunately, its success does not spill over into fair treatment of its employees. To the contrary, the restaurant is a hotbed of racial discrimination. Employees that dare complain suffer harsh retaliation and are either terminated or treated so miserably that they often have no choice but to leave. In addition, Mission Chinese engages in petty time-shaving against its employees who earn nothing more than their tips and a reduced minimum wage.

## JURISDICTION AND VENUE

2.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

4.      All Defendants are hereinafter collectively referred to as "Defendants."

5.      Defendant MCFNY2 LLC is a New York corporation which operates Mission Chinese restaurant on the Lower East Side of Manhattan.

6.      Defendant James Danile "Danny" Bowien is an owner of Mission Chinese.

7.      Defendant Bowien is actively involved in Mission Chinese's day to day management, and he frequently consults with the restaurant's management regarding personnel and payroll decisions.

8.      Defendant Bowien has ultimate authority over employees' rates of pay, schedules, hiring and firing, and maintenance of employment records.

9.      Defendant Bowien was aware of the discriminatory conduct alleged herein and was apprised of the restaurant's actions as they were unfolding.

10.    Defendant Jane Hem is the Assistant General Manager at Mission Chinese. Defendant Hem actively managed employees at Mission Chinese, as illustrated by the facts alleged herein.

11.    Defendant Adrianna Varedi is the General Manager at Mission Chinese. Defendant Varedi actively managed employees at Mission Chinese, as illustrated by the facts alleged herein.

12.    Plaintiff Erin Lang worked for Defendants at Mission Chinese as a Server and at times a Captain from April 2016 until December 2017.

13.    Plaintiff Ilana Engelberg worked for Defendants at Mission Chinese as a Server from August 2015 until December 2017.

14.    Plaintiff Zaynah Shaikh has been employed by Defendants at Mission Chinese as a Food Runner from July 2017 through January 2017.

15.    Plaintiff Bayley Blaisdell was employed by Defendants at Mission Chinese as a Server from March 2017 to December 2017.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.    Plaintiffs bring the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all front-of-the-house tipped employees, including captains, servers assistants, bartenders, bussers, runners, and servers, employed by Defendants on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies,

programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage and overtime rates for all hours worked. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19.     Plaintiffs bring the Third, Fourth, and Fifth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all front-of-house tipped employees, including captains, servers assistants, bartenders, bussers, runners, and servers, employed by Defendants on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

20.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

21.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than fifty (50) members of the Class.

22.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation and failing to provide proper wage notices and wage statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)     Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law.

b)     At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay Plaintiffs and the Class members for their work.

c)     Whether Defendants paid Plaintiffs and the Class members the New York minimum wage for all hours worked.

d)     Whether Defendants properly compensated Plaintiffs and Class members for overtime.

e)     Whether Defendants provided Plaintiffs and Class members with the proper wage notices and wage statements.

## FACTS

### Wage and Hour Allegations

27.     Defendants committed the following acts knowingly, intentionally, and willfully.

28.     Plaintiffs were paid according to the New York food service workers' tip credit throughout their employment with Defendants.

29.     Under the relevant tip credits, Plaintiffs were paid the following regular rates: $5.00 in 2015, which was lower than both the federal and state minimum wages, and $7.50 in 2016 and 2017, which was lower than the state minimum wage.

30.     Plaintiffs sometimes worked more than 40 hours per week.  When Defendants paid them for these hours, it was at the tip credit overtime rate.

31.    Defendants were not entitled to pay Plaintiffs pursuant to the relevant tip credits because they did not provide proper notice of the tip credit.

32.    In addition, Defendants often required Plaintiffs to spend more than 20% of their shifts performing non-tipped work, such as setting up, rolling napkins, and polishing silverware.

33.    By way of example, when Plaintiffs were scheduled to work a lunch-only shift, they had to arrive at 11:00 a.m.  As the restaurant opened at 12:00 p.m., Plaintiffs performed sidework for at least one hour.  The entire shift lasted until about 3:00 p.m., meaning that Plaintiffs spent far more than 20% of their shifts performing non-tipped work.

34.    For some of the time that Plaintiffs worked, they were not paid at all.

35.    For example, Plaintiffs were given specific sidework to perform after they finished service for the night.  When Plaintiffs took longer than 30 minutes to perform this sidework, which often happened, Defendants altered Plaintiffs' clock in times to reflect only 30 minutes of work after being cut from the floor.

36.    Defendants automatically deducted 30 minutes form Plaintiffs' timecards on account of meal breaks, despite the fact that Plaintiffs seldom took meal breaks lasting longer than a few minutes.

37.    Plaintiffs' weekly wage statements did not accurately state the amount of tip credit that Defendants utilized, in violation of NYLL § 195(3).  Before 2017, the paystubs made no mention of the tip credit at all.  Starting in 2017, the wage statements contained amounts that were different than what Mission Chinese actually utilized and what was permissible by law.

38.    Defendants knew that nonpayment of minimum wage/overtime and improperly forcing and/or the Plaintiffs to share their tips with management would economically injure Plaintiffs and violated federal and state laws.

39.     Defendants committed the foregoing acts against Plaintiffs and the FLSA Collective Plaintiffs.

## Race Discrimination/Retaliation Allegations

40.     Defendants committed the foregoing acts willfully.

41.     On January 20, 2017, Plaintiff Engelberg brought to the attention of Gregory Wong, then Mission Chinese's Director of Operations, the issue of rampant race discrimination between employees at Mission Chinese.

42.     For example, Plaintiff Engelberg informed Mr. Wong that:

- Kitchen employees had referred to a Latino runner named Hector as a "wetback."

- During the election season of 2016, Chef Quynh Le stated that he "can't wait until Trump is elected and all of you [Latinos] are deported."

- Kitchen employees burned the arm of Anthony Cora, the only black kitchen employee, with a burning hot spoon dipped in hot oil.

- Plaintiff Engelberg found Mr. Cora lying beneath a counter crying after Chef Eric Tran exclaimed to the kitchen staff that Mr. Cora is a "fucking idiot."

43.     Mr. Wong promised that the restaurant would look into and correct the situation.

44.     What in fact happened was that Mr. Cora was eventually terminated by the restaurant for pretextual reasons.

45.     In or about mid-2016, Plaintiff Lang was allowed to work two shifts per week in a Captain position, which entailed a slightly higher hourly wage – $10 instead of $7.50 – and a higher percentage of tip pool.

46.     In March 2017, Plaintiff was removed from the Captain position.  Floor manager Gabby Ayoub and Defendant Varedi explained to Plaintiff that there was no punitive purpose to this change, but that the restaurant decided that it did not require a Captain position.

47.     In or about June 2017, Plaintiff Lang took an authorized one week leave to deal with medical issues.

48.     After Plaintiff Lang returned, Defendants discriminated her by reducing her shifts from four to five shifts per week to two to three shifts per week.

49.     Plaintiff Lang complained about this schedule change to Defendant Viredi. Defendant Varedi responded that she would not restore Plaintiff Lang to her regular shifts until she "gets it together," and that she could not have her previous shifts because of her "personal problems."

50.     In or about October 2016, Defendant Hem became a floor manager/assistant general manager at Mission Chinese.

51.     Defendant Hem regularly made discriminatory comments toward Plaintiff Lang.

52.     Defendant Hem is Asian.

53.     Plaintiff Lang is African American.

54.     On one occasion Defendant Hem told Plaintiff Lang that she "wouldn't want to be with [her] in a dark alley."

55.     Defendant Hem often mocked Plaintiff Lang by speaking to her in "hip hop" slang and intonation.

56.     Defendant Hem once saw money falling out of Plaintiff Lang's pockets and joked about it being "stripper money" in African American slang talk.

57.     Defendant Hem told Plaintiff Lang that her dreadlocked hair looked like a "Grinch's fingers."

58.     Defendant Hem eventually escalated the discrimination by telling Plaintiff Lang that she was too "aggressive," "not smiley enough," and "angry," and that her coworkers were afraid of her.

59.     On one occasion Defendant Varedi approached Plaintiff Lang and asked her "how to speak" with another African American server who was "too jovial" on the restaurant floor during service.

60.     In or about early November 2017, Defendants hired a new, non-African American employee to fill the Captain position.

61.     On November 18, 2017, Plaintiff Lang confronted Defendant Hem about the discriminatory behavior.  During the discussion, Plaintiff Lang mentioned that she thought it was unfair that Mission Chinese reinstated the Captain position but did not give it to her.

62.     Plaintiff Lang also complained about the discriminatory treatment and the repeated comments about her being aggressive and scary to employees.  Plaintiff Lang stated clearly that she believed these accusations were based on her being black.

63.     When confronted about race discrimination, Defendant Hem became irate.  She raised her sleeve and shouted at Plaintiff, "How dare you?!  I am blacker than you!"

64.     Defendant Hem's comment was truly absurd and offensive.  Defendant Hem is not black and/or African-American.  Defendant Hem's outburst made it clear that she did not respect Plaintiff Lang's complaints about race discrimination.

65.     To make matters worse, after Plaintiff Lang left for the night, Defendant Hem proceeded to approach other black employees on the floor.  In attempt to disprove Plaintiff

Lang's accusations of race discrimination, Defendant Hem indiscreetly put these employees on the spot and asked if they felt she discriminated against them.

66.      Given the realization that Defendant Hem could not be trusted to correct her discriminatory conduct, Plaintiffs Lang, Shaikh, Engelberg, and Blaisdell decided to discuss the issue with Human Resources and Defendants Varedi and Hem at a November 20, 2017 meeting. Joanna Didaro of Human Resources attended the meeting.

67.      At the meeting, Plaintiffs raised their concerns about the restaurant's discrimination against black employees.  Plaintiff Lang also mentioned that she felt that she was being mistreated because of her medical issues.

68.      In a subsequent Human Resource meeting shortly thereafter, conducted by Leah Reigel of Human Resources, Plaintiff Engelberg reminded the group that she had attempted to raise race discrimination issues in the past with Gregory Wong.

69.      Defendants immediately retaliated against Plaintiffs for raising these complaints. This harassment varied from kindergarten-like behavior to downright nasty behavior causing humiliation and loss of income to Plaintiffs.

70.      Specifically, Beverage Director Sam Anderson informed Plaintiff Engelberg that he heard Defendants Hem and Varedi decide that they would "turn up the screws" on the complaining Plaintiffs and that they were "easy to eliminate."

71.      When Plaintiff Lang returned to work, she was told that she would be required to take "paid leave" until the restaurant investigated her complaints.  Defendant Hem told Plaintiff Lang "it would be best if you don't come in."  During the paid leave, Plaintiff earned $11 per hour for 40 hours ($440) with no tips per week.  This was much less than what she earned on regular workdays, where she earned tips."

72.     Defendant Hem approached various employees at the restuarant and, to pit them against Plaintiff Lang, told them that Plaintiff Lang had said nasty things about them.

73.     For example, Defendant Hem approached Plaintiff Engelberg and encouraged her not to take Defendant Lang's side.  She told Plaintiff Engelberg that Plaintiff Lang called her lazy and made other complaints about her.

74.     Defendant Hem also told Plaintiff Engelberg that Plaintiff Lang completely lied about the "blacker than you" comment.

75.     Defendant Hem's denial was a plain lie.  She has since admitted several times to making the offensive statement.

76.     Defendant Hem complained to Plaintiff Engelberg that "Erin was twisting things."  Defendant Hem continued, "how can a group of strong girls be taken in" by Plaintiff Lang's allegedly false accusations?

77.     Defendant Hem had similar conversations with Plaintiff Blaisdell, wherein she denied Plaintiff Lang's accusations and told Plaintiff Blaisdell that Plaintiff Lang had said bad things about her.

78.     Plaintiff Blaisdell told Defendant Hem that she was disturbed by Defendant Hem's behavior and that it made her cry when she got home that evening.

79.     The next day Defendant Hem told Plaintiff Blaisdell, "Erin filed a formal complaint against me because you cried.  You need to take my side or I'll be fired."

80.     Upon information and belief, Defendant Hem also approached an African American service employee at Mission Chinese, claiming to need the employee's phone for an "emergency" telephone call.  In reality, Ms. Hem snooped through the employee's phone, found a group chat between the few black employees at Mission Chinese that included Plaintiff Lang,

and forwarded to herself a screenshot of their private conversation.  Defendant Hem attempted to hide the evidence by deleting the record from the employee's phone, but the employee discovered what Ms. Hem had done when she reviewed her "imessages" on her computer.

81.    Defendants also had Lauren Broder, a floor manager, conduct a pre-shift meeting in Plaintiff Lang's absence, wherein she admonished the staff for being "negative" and complaining.  Given the climate in the restaurant and the fact that Defendant Hem had essentially publicized Plaintiff Lang's complaints throughout the restaurant, it was clear that Ms. Broder's comments pertained to Plaintiff Lang's complaints.

82.    Defendants' witch hunt against Plaintiff Lang became too much for Plaintiff Lang.

83.    Specifically, Defendants Hem and Varedi made Plaintiff Lang's claims of race discrimination known throughout the restaurant and attempted to quash them by getting her coworkers to side against Plaintiff Lang.

84.    In addition, Defendant called Plaintiff Lang a liar by denying the entire "blacker than you" comment privately to Plaintiff Engelberg, only to admit to the bizarre comment at a later Human Resources meeting.  At that meeting, Defendant Hem "explained" she was attempting to "level" with Plaintiff, because she is an "Asian lesbian," and that is what she meant when she said "I am blacker than you."  This ridiculous response, coupled with her private denials, exacerbated the hurtful effect of Defendant Hem's discrimination.

85.    After Plaintiff Lang consulted with her therapist, she informed Defendants that she had no choice but to resign from her employment at Mission Chinese.

86.     Consistent with their agenda to "turn up the screws" on the other complainers, Defendants retaliated against Plaintiffs Engelberg, Blaisdell, and Shaikh after realizing that these individuals would not defend them from Plaintiff Lang's accusations.

87.     Defendants wrote-up Plaintiff Engelberg for arriving late to work on December 12, 2017, a day when the entire city was well-aware that subways were delayed because a pipe-bomb detonated. Plaintiff Engelberg was a solid employee and had never received discipline of any kind before complaining about race discrimination at the restaurant.

88.     On other occasions, Defendant Varedi and Hem berated Plaintiff Engelberg in front of customers and coworkers for bogus and/or miniscule deficiencies in her performance. For example, Plaintiff Engelberg was reprimanded by Ms. Varedi for pouring wine for a customer slightly above the break in the wine glass. On another occasion, Defendant Varedi was reprimanded for not clearing tables quickly enough, despite the fact that there were soiled napkins and glasses throughout the restaurant at other servers' tables.

89.     As stated above, Plaintiff Engelberg was an excellent server and never suffered a reprimand before complaining about race discrimination. It was clear that Defendants were doing as they planned, "putting the screws" to her and making her life at the restaurant miserable.

90.     Accordingly, Plaintiff Engelberg had no choice but to resign her employment on December 24, 2017.

91.     During this time, Defendants also went on a campaign to have Plaintiff Blaisdell fired.

92.     Defendant Varedi wrote up Plaintiff Blaisdell for drinking on the job. What in fact happened was that Plaintiff Blaisdell, consistent with restaurant policy, poured a taste of

wine for a customer before filling the customer's glass of wine. Plaintiff Blaisdell explained this to Defendant Varedi and protested that it was clear that the write up was motivated by retaliation for bringing race discrimination to her attention.  Plaintiff Blaisdell also explained the entire incident would have been available on the restaurant's video footage.  Nevertheless, Defendant Varedi refused to back down from the bogus write-up.

93.     Prior to her complaints about discrimination, Plaintiff Blaisdell had never been formally reprimanded at the restaurant.

94.     Days later Plaintiff Blaisdell was written up for "stacking plates incorrectly."

95.     On December 21, 2017, Defendant Hem intentionally knocked over a cup of coffee that Plaintiff Blaisdell was drinking.  Defendant Hem did not apologize.  Plaintiff Blaisdell informed Defendant Varedi about the incident and stated that she was clearly being targeted because of her complaints on behalf of Plaintiff Lang.

96.     On December 26, 2017, Plaintiff Blaisdell drove seven hours back to Manhattan from where she had spent Christmas in order to make her scheduled shifts at Mission Chinese. When she arrived Defendant Varedi called her into a meeting and told her she was being terminated for "taking a tone with management."

97.     Prior to the complaints about discrimination against Plaintiff Lang, Plaintiff Shaikh was repeatedly informed by Defendants Hem and Varedi that Plaintiff Shaikh would soon be promoted to a server position, which earned more money in tips than a food runner. However, after Plaintiff Shaykh's participation in the complaint about discrimination, Defendants abandoned these plans.  Instead, Defendants hired several new servers, ignoring their promises to promote Plaintiff Shaykh.

``

98.    In late December 2017, Plaintiff Shaikh confronted Defendant Hem and asked her if the failure to promote Plaintiff Shaikh was a punishment for complaining about race discrimination. Defendant Hem denied this and insisted that "good food runners are very hard to find," and that was why she needed Plaintiff Shaikh in the food runner position. However, in a telling manner, Defendant Hem proceeded to tell Plaintiff Shaikh how upset the accusations of race discrimination made her and attempted to influence Plaintiff Shaikh to defend her in any ensuing investigations.

99.    In any event, Defendants' denials of retaliation against Plaintiff Shaikh are plainly false. Defendants had been promising Plaintiff Shaikh a promotion repeatedly and then, in an about face, immediately withdrew that promise after Plaintiff Shaikh's complaints of discrimination.

100.    As a result of this retaliation, Plaintiff Shaikh has lost and continues to lose significant income.

## FIRST CLAIM FOR RELIEF
### (FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)
### (Brought By Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

101.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

102.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs.

103.    In 2015, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the full federal minimum wage for each hour worked.

104.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*)
### (Brought By Plaintiffs on Behalf of Themselves
### and the FLSA Collective Plaintiffs)

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

106.    Throughout the statute of limitations period covered by these claims, Plaintiffs and the FLSA Collective Plaintiffs occasionally worked in excess of forty (40) hours per workweek.

107.    At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiffs and the FLSA Collective Plaintiffs at one and one half times the full federal minimum wage for all work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA and relevant regulations even though the Plaintiffs had been entitled to overtime.

108.    Plaintiffs, on behalf of themselves the FLSA Collective Plaintiffs, seeks damages in the amount of their unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*)
### (Brought By Plaintiffs on Behalf of Themselves and the Class)

109.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

110.    Defendants knowingly and willfully failed to pay Plaintiffs and the Class members the full New York State minimum wage for all hours worked.

111.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by N.Y. Lab. Law § 663.

### FOURTH CLAIM FOR RELIEF
**(New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.***
**N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 146-1.4, 137-1.3)**
**(Brought By Plaintiffs on Behalf of Themselves and the Class)**

112.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

113.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of 40 hours in any workweek.

114.    Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate of one-and-one-half times the full New York minimum wage for all hours worked in excess of forty (40) hours per workweek.

115.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by N.Y. Lab. Law § 663.

## FIFTH CLAIM FOR RELIEF
### (New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)
### (Brought By Plaintiffs on Behalf of Themselves and the Class)

116.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

117.    Defendants did not provide Plaintiffs and members of the Class with the wage notices and wage statements required by N.Y. Lab. Law § 195.

118.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. L. § 198, pre- and post-judgment interest, and costs and attorneys' fees as provided by N.Y. Lab. Law § 198.

## SIXTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL"))
### N.Y. Admin. L. §§ 8-101 *et seq.* – Race/Disability Discrimination and Retaliation
### (Brought by Plaintiffs on Behalf of Themselves)

119.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

120.    A copy of this Complaint will be delivered to the New York City Corporation Counsel.

121.    In violation of NYCHRL, Defendants intentionally discriminated against and/or aided and abetted discrimination against Plaintiff Lang on the basis of her race and/or disability.

122.    In violation of NYCHRL, Defendants intentionally retaliated against and/or aided and abetted retaliation against all Plaintiffs because they complained about Defendants' discrimination,

123.    As a direct and proximate result of Defendants' discrimination/retaliation against Plaintiffs, they have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

124.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiffs' good name and reputation, lasting embarrassment, and humiliation.

125.    Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiffs' statutorily-protected civil rights.

126.    As a result of Defendants' unlawful conduct, Plaintiffs are entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.    Designation of this action as a class action pursuant to F.R.C.P. 23.

D.    Designation of Plaintiffs as Representatives of the Class.

E.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F.    An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, and punitive damages, to be paid by Defendants;

G.    Penalties available under applicable laws;

H.    Costs of action incurred herein, including expert fees;

I.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

J.    Pre-judgment and post-judgment interest, as provided by law; and

K.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York          Respectfully submitted,
          February 1, 2018

                                    JOSEPH & KIRSCHENBAUM LLP

                                    By: _____
                                        D. Maimon Kirschenbaum
                                        Denise Schulman
                                        32 Broadway, Suite 601
                                        New York, NY 10004
                                        Tel: (212) 688-5640
                                        Fax: (212) 688-2548

                                        *Attorneys for Named Plaintiffs, proposed
                                        FLSA Collective Plaintiffs, and proposed
                                        Class*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

22